The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is Karen Elizabeth Rivera-Medrano v. Merrick B. Garland, Appeal No. 20-1667. Attorney Kim, please introduce yourself for the record and proceed with your argument. Thank you. Good morning, Your Honors. May it please the Court. My name is Sang-Yeop Kim. Good morning, Your Honor. May I reserve one minute for rebuttal? Yes. Thank you. This case concerns whether the IEJ provided a reasonable opportunity to petitioner to examine the documents that were being used against her. And let me start with the context. We are talking about petitioner who was without attorney, who does not speak, understand, read English, who is a rape victim, who is detained. Now, at her last hearing, in the middle of the cross-examination, the attorney for the Department of Homeland Security submitted two documents. They were 2017 Credible Fear Interview Notes and I-213. They were total about 20 pages. Now, under this circumstance, what the IEJ must have done was, number one, to explain about these rights to her. And number two, either offer her or ask her what she would want to do, whether she would want to continue the case so that she can find a way to review the documents. The IEJ did neither. So, the only question that IEJ... Mr. Kim, isn't it true that at her first hearing that her rights were explained to her? And your position seems to be that the IEJ had an obligation to re-explain those rights to her. Right. That is correct, Your Honor. So, at her first hearing, to be precise about it, the IEJ said, you will have a reasonable opportunity to review the document evidence against you. That reasonable opportunity never came. So, IEJ did follow the language of the regulation that petitioner will have a reasonable opportunity. The problem is, when these documents were submitted at her last hearing, which was six weeks after the first hearing, the IEJ never explained about what the meaning of the reasonable opportunity was. So, without knowing any of the law of immigration law and under extreme pressure, obviously, she was being detained and she was talking about her life, the fact that she was raped by the stepfather to the IEJ. She was not aware of any of her rights. And the only question that IEJ posed was whether she would object to the admission of this document as a legal significance of this question and her answer. But putting that issue to the side, what's clear from the transcript is IEJ never explained about the promise that Congress made to give a reasonable opportunity for petitioner to review those documents that were being used against her. Counselor, let me explain, please. What exactly is the rule that you would like us to articulate in this case? The way you started your argument, it sounds like it's a very case-specific. You focused on her age, some of her traumatic history, lack of command of English and so forth. Are you suggesting that, given those and other facts like that, that she was not giving a meaningful opportunity to respond? Are you looking for something broader than that, some broader formulation of a rule? Thank you for the question, Your Honor. So, we are not asking an expensive and broad ruling on this issue. But what we are asking is the IEJ has the obligation to explain about the rights to non-citizens who are facing deportation, and that's important. I'm not suggesting that the court has to micromanage how the IEJ is conducting their hearings. They have the tools they can use to manage the hearings. For example, under the regulation, they can use the pre-conference hearing to exchange the exhibits. They can find a way to remind the other party to submit exhibits in advance. But if that does not happen, if the IEJ is not inclined to use those tools to manage the hearings, what the IEJ has to do is, if this such circumstance happens, the IEJ has to protect those rights because that's what Congress promised. So, we are not asking an expensive ruling. However, what we are asking is, at minimum, reminding the IEJ that the IEJ has the obligation to protect the rights that Congress promised. Let me press on this because there's probably a hundred principles of law and procedure that can affect the outcome of one of these proceedings. We're deciding cases every month on various things, on what social group is and the like. I don't think you're saying that the IEJ would have to basically explain all of that to a petitioner. So, how do you settle on this one particular rule that a particular explanation has to be given? The IEJ, as I understand it, showed her the document and then asked her if she had any objections to it being admitted. She said she did not. Obviously, what a lawyer might have done on her behalf, perhaps, is to say, well, we'd like a while to read it at length or something. Why does the IEJ have to, in effect, play her counsel on that issue but not on so many others? Thank you for the question, Your Honor. I think that goes to the role of the IEJ in this case and in removal proceedings. So, I agree that IEJ should not be the counsel for petitioner non-citizens, whether they are represented or not. But what the IEJ has to do, at minimum, is to protect those rights that Congress promised. So, those rights are not a lot, but they are still fundamentally important. Right to counsel. Provide a reasonable opportunity to examine those evidence against non-citizens. Right to present the evidence on their behalf and confront the government's witnesses. Those are not a lot, but IEJ... Let me interrupt you on that because the IEJ did tell her she had a right to examine any of the evidence against her. So, he told her what the statute says. He then, when the evidence came, asked her if she had any objection. So, the proposition you're putting forward is he has to go beyond that and then also explain application of that rule and what options it might create for her. I think if I understand your argument. Two responses to Your Honor's point. So, first, IEJ never explained to her that she has a right to have a reasonable opportunity to examine the consistent with the regulations language. You will have a reasonable opportunity to examine the evidence against non-citizens. Now, that's different from you have the reasonable opportunity to review the document. So, you're saying that we can do it narrowly? That we can rule narrowly and say having the opportunity is different from simply being told you will have the opportunity? Yes, Your Honor. So, a regulation, I agree the regulation only said this language. You will have an opportunity. But now, that's different when we are talking about a hearing that happens six weeks after the first hearing. Now, obviously, if everything happened on the first day of the hearing, the petitioner who was a diligent person would have asked a question about that right. But that's not what happened. IEJ just followed the regulations language six weeks before. And then when this happened, IEJ assumed that, I don't know what IEJ assumed, but IEJ just did not explain anything about her rights. This is somewhat similar to right to counsel in the context where the counsel accidentally or abruptly decides to withdraw. So, the IEJ has the obligation to give those rights at the outset of the case. Now, on your due process argument, how do you deal with the fact that in criminal cases, even, the prosecution doesn't have to produce all of the evidence prior to trial against the defender? So, I will respond to that question with a statutory language. You're making a due process argument in your brief as well. And that's what I'm interested in. How do you reconcile the due process argument that you've made with the way these matters are handled even in criminal trials? Counsel, that's time. If I may answer that question, Your Honor. So, due process is a flexible concept in removal proceedings. So, the point is whether the proceedings were fundamentally fair and whether the person had a fair opportunity to present the case. And because of this flexibility, the court can apply as applied to this case that in this case particular, the person did not receive the process that was due, regardless of the nature of the proceedings. So, unlike the criminal case, unlike other civil proceedings, there are not many protections that process the fundamental fairness. And that fairness was completely absent in this case. Therefore, this court can still grant a petition, not only based on statute, but if the court is inclined, the court can grant a petition based on due process clause. Judge Thompson, I'd like to ask a quick question. Please. Thank you. Counsel, I'd like you to focus on the remand issue. I understand that you read the decision of the BIA to have focused only on the affidavit of the psychologist, because the BIA specifically mentions that, does not mention the other documents that were submitted for consideration. And yet, the BIA does refer generally to evidence. What justifies your argument, if I understand it correctly, that there was an abuse of discretion because the BIA focused only on one document and not the totality of the evidence that was submitted? What, in the language of the BIA, permits you to make that argument? So, the BIA, thank you for the question, Your Honor. And that goes to the evidence that the BIA denied the motion to remand because the additional documents did not clarify or cure the adverse credibility determination. But that's incorrect. It may be correct in other cases, but not here. And here's why. So, the IG relied on the fact that she may have had the fresher memory in 2017 because the rape only happened three months before the interview. So, IG relied on that statement to partly form the adverse credibility finding. And petitioners submitted the expert affidavit saying she had PTSD. She still has the PTSD. So, with that evidence, it makes no sense for the agency to still rely on the fact that she may have had the fresher memory in 2017, which is actually the opposite. Now, under this circumstance, other evidence, including the affidavits coming from her family members who witnessed the incident, the rape and sexual assault, may cure the adverse credibility determination, which is why it was the BIA's abuse of discretion to deny the motion to remand on that reason. But if the court were to grant the petition based on the statutory ground or due process, we believe the proper remedy is to send this case all the way back to the IG to redo the hearing. And if that happens, the IG has broad discretion to accept all the evidence the petitioner already submitted to the BIA. So, the court does not technically need to reach the motion to remand matter if the court were to grant the petition based on this violation of statute and due process. Dr. Thompson, I have one more question. There are thousands of these hearings, and these forms, these statements exist in a very large number of them. Do you know what the routine practice is? Are these forms, statements, usually given to the petitioners, to the aliens prior to the hearing? For that question, I tried to interview many seasoned immigration attorneys who practice law at the Boston Immigration Court. It's my understanding it just does not happen. Now, after COVID-19, it may have happened because of the logistical issue, because the attorney just obviously cannot go to the court. Maybe right now it's different, but maybe a year ago. But it's my understanding that it does not happen. It just doesn't happen at all. I also interviewed a person who practiced immigration law 25 years ago. It appears that that was the same practice that the government had 25 years ago. In other words, the norm is these statements are never given to people before the hearing. Correct. Thank you. Judge Lopez, I thought you had another question. No, I'm fine. Mr. Kim, could you clarify for me, are these documents generated by government agents, or are they completed by the petitioner herself? So, there are two ways that this type of evidence can be produced to the court. So, because the non-citizens bear the burden in most cases, if they have those documents— I'm trying to figure out how they're generated. I mean, is it a petition which the petitioner would fill out by hand, or if she has access to a typewriter? Or does the petitioner give the information to a government agent orally, who then writes down what the petitioner is her story and the basis for the relief she's seeking? The letter is correct. So, petitioners, non-citizens provide information orally, and it's the government agency that produces this document and put it in the database or share this document with others. So, petitioner, non-citizens have no real access to even modify, confirm, and check other than orally confirming the information contained in this report. So, if she was represented by an attorney, and you've done this many years, like you said, and you've been before us a bunch of times, I mean, would this be something you would be requesting ahead of time if you were representing her then? So, I actually tried to do that after this case was started for the briefing schedule purposes. And so, the only way that I could do it, based on my experience, is file a motion to subpoena. And most times, the immigration judges do not entertain those motions greatly, and most of the time denied. So, I don't really have access to those documents. And in some cases, I beg the other attorney to give me those files if they have any. Sometimes they complied, sometimes they didn't. So, there is really no legal way or meaningful way to get those documents in advance. So, how would a petitioner verify the accuracy of the information an agent places on the forms? So, the accuracy can be confirmed if non-citizens have those documents in advance. So, for example, in certain cases, they may have those documents. For example, the great example is this case about 2019 reasonable fear interview note. So, petitioner had access to that document. So, when she was being confronted about how many times she was raped in 2017, the IJ said, you said three times. And she said, no, that was a mistake. It's only one time. And so, that's a kind of great example to show if the petitioner, if non-citizens have those documents in advance of the hearing, they review the documents in advance. If they have a counsel, they verify the information with the counsel, and they go to court in the hearing. If they get confronted, they provide explanations to those purported inconsistencies. And having a meaningful opportunity to review those documents is key to provide the sufficient explanation because under the case law of the adverse credibility issue, it's not only about the purported inconsistencies. It's about explanation to those inconsistencies. So, which means that even if there may be technically inconsistency between one document versus her in-court testimony, if her explanation is sufficient and convincing, the IJ may well find a person credible. So, that's the problem of the prejudice in this case. All right. Anything else from my colleagues? All right. We'll be back to you for your rebuttal. Good morning, and may it please the court. Greg Mack, counsel for the Attorney General. Judge Thompson, I want to speak initially to your question about the process in terms of your concern rightfully, how does a noncitizen speak to or address or revise their statements that they've made to the border to assign them an officer? In the early part of the government's brief, we lay out that process that happens at the border between initially a border patrol agent or a customs agent. This petitioner gave a response back in 2017 on the I-213 at the border, and then she's interviewed several times by different asylum officers who belong to the United States Citizenship and Immigration Services. From there, if the noncitizen presents a reasonable fear or credible fear, they get a full-blown de novo hearing before the immigration judge. In this case, in our brief, we note that at page 2912 of the record, the asylum officer goes over a summary of her responses, particularly with respect to the rape, and she confirms that her interview, her comments to the asylum officer were accurately recorded. So that's the process of retaining the statements by the government and providing the noncitizen an opportunity to extend and revise their comments before they go on to a hearing before the immigration judge. So there is that opportunity with the asylum officer for the noncitizen to fully give their statement about why they fear returning to their home country. The asylum officer takes that information in and decides whether the person has a reasonable fear to permit them to go on to a full-blown hearing with the immigration judge. So that's with respect to the process. Counsel, let me ask you a question about what you're describing, please. I have a document that is in the form of a transcript of an interview by the asylum officer. Now, we went through this in the Cuestas Rojas case. I mean, it's my understanding that although this document is in the form of a transcript, it is in fact not a verbatim transcript. These are notes that were taken, in this case, by the asylum officer. Is that correct? That's correct, Your Honor. It is not a verbatim recordation of the statement before the asylum officer. Okay. But the summary, which is what the alien is asked to confer, that is kind of a distillation of the notes that the asylum officer prepares on the spot and then asks if that summary is accurate. Not the entirety of the notes that preceded it, but it's the summary that they're being asked to confirm is accurate. Is that correct? That's correct. It's sort of an encapsulation, and you've said A, B, and C. Have I accurately recorded A, B, and C? Okay. That's helpful. I just wanted to clarify that. Thank you, Your Honor. And so again, that goes to the process question that you had, Judge Thompson. So let me speak to, let's try to unpack the statutory terms reasonable and against in section 1229A, B, 4B. Let's imagine that petitioner told the asylum officer on August 26, 2019, that she was raped three times, which she did at 2942 of the record. Let's also assume that her application for withholding or removal says that she was raped numerous times. That's at 2920 of the record. And then that she told the immigration judge in her testimony in November 22 of 2019, that she was raped three or numerous times. And that's at 2879 or 2894. Excuse me. Under that scenario, the August 29 interview was not evidenced against her. The August 29, 2019 interview says she was raped three times. Her application says numerous times, but let's assume she told the immigration judge at the hearing that she was raped three times. Those prior documents are not against her at that particular moment in real time. It's only at the moment that she gets before the immigration judge at the November 2019 hearing that she says she was raped once. The previous statements before that were that she was raped three times or she was raped numerous times. If she told the immigration judge, and that's part of the whole problem here, if she told the immigration judge that she was raped three times, and I want to echo the immigration judge, the immigration judge says, I'm prepared to believe you and I these other statements where you say you were raped three times or numerous times. So it's only in real time before the immigration judge at the November 2019 hearing, where she says she was raped once, that the evidence turns out to be against her. Five minutes. So that's with respect to the statutory language. So in contrast, what happened here is- Let me ask you another process question, because just based upon that and thinking about what the So she's not an English speaker. Would she have been provided with a translator at the border and in her subsequent interviews with an asylum officer? With an asylum officer, she would, and it's in the record, she would have had an interpreter. It's usually by telephone, but not necessarily, I don't think she had one at the border. But although her statements are recorded at the border, obviously, she tells the border patrol agent or border officer, I refuse to turn in drugs. So somebody, she said something to them that was recorded in English, but certainly with the asylum officer, she does have an interpreter at that particular junction. And so according to her testimony, she was sexually assaulted by her stepfather before. Correct. At the hearing, raped once. I guess I'm trying to figure out why that wouldn't be a translation issue. How do you ensure that that's not a translation problem? It's not a translation problem because in her withholding application, she says she was raped numerous problems. At the hearing, she says, well, that's a mistake that they made. Now she could say that it's a mistake that they made and to your point, it might be a translation issue, but it's not here because in her application, which is written in English, she says she was raped numerous times. And she told the asylum officer that she was raped three times. So it's not a translation issue. And with respect to her withholding application, she says she filled it out by using a dictionary. So there doesn't seem to be a language problem there. The application is fully in English. And she says she had the assistance of another person in filling out the application. So it's not a translation or language issue in that regard, Your Honor. Well, maybe it's a different kind of problem, counsel. Let me ask you about the remand issue. I mean, the IJ said that he found her to be sympathetic. The IJ said that if I was just evaluating her credibility and what I am hearing now in front of me, I would believe her. But there are these inconsistencies, the kind that you've just been going through with Judge Thompson. And because of those inconsistencies, I have to make this adverse credibility determination. Before the BIA, the petitioner submits this detailed analysis by Dr. Nolten, explaining why somebody with her history, he diagnosed her as having PTSD. Somebody with her history would have memory issues, or would have difficulty confronting some of the trauma from her past. And so in light of that history, these kind of inconsistencies that we've just been talking about are not at all surprising. And yet the BIA with that affidavit in front of the doctor says, well, we don't see any need for a remand because they would not make any difference in resolving the discrepancies. I don't understand on what basis the BIA could purport to make a judgment about how the IJ would evaluate that analysis by the doctor. The IJ is the one who heard the testimony. The IJ is the one who made the observations about how she was otherwise credible and sympathetic. Isn't it the IJ who should have an opportunity to factor that affidavit into the analysis of her credibility? I don't see why that's not an abusive discretion by the BIA to make that judgment, which seems to be properly one that the IJ should make. And your honor, I think the IJ does take into account her background and her circumstances. So the IJ, as you mentioned, seemed to be sympathetic to her plot and her circumstances. So I think the IJ took that into account with respect to who was in front of me. What is this person presenting to me with their story? I find it rather sympathetic, but these inconsistencies are out here and the psychologist's report isn't going to do away with the inconsistencies. Even if on remand, an immigration judge can still look at the psychologist's report and say, I still have the inconsistencies. There may be an explanation. Sure, he could. But he's never given the opportunity to make that judgment. That report is never before him. The BIA is presuming to make that judgment for the IJ. Why shouldn't that material be before the IJ? So that the IJ, who's the one who spent all this time listening to her, analyzing the inconsistencies, why isn't it the IJ who should make that judgment, not the BIA? Counsel, that's time. If I may answer, Your Honor. Please. I think the immigration judge does have that information with respect, not scientifically, of course, but the IJ has the whole person in front of them. And what the psychologist's report is, it's an explanation for the inconsistencies, but the immigration judge had before her, before him, her circumstances and her plight and the fact that the psychologist says she's without guile. I think the immigration judge took that into account saying, if I was just listening to this story, I would be one who would believe it. And what the board is saying, the board was reasonable to conclude, we're not sending this back just simply on this psychologist's report, because all the psychologist's report is providing explanations, but they don't deal with the inconsistencies. Then you have the affidavit of the mother that speaks to the issue of what was reported to the police, that speaks to the issue of the rape, sexual assault by the father. Those were two of the inconsistencies that the IJ focused on. The mother's affidavit addresses those arguable inconsistencies. Why shouldn't the IJ have an opportunity to examine that as well? That too goes to the inconsistency issue, does it not? But it's still furthering the inconsistency. So the IJ has already found them inconsistent with respect to that particular point on what story she's telling. She's telling the asylum officers her mother didn't provide any help, or the police weren't helpful at all. Now the mother is saying she did provide some help and the rape was reported. So it still goes in extending the same inconsistency before the immigration judge. And really, the motion to remand just presented the affidavit, didn't really give any context behind the affidavit. The motion to remand was mostly focused on a psychologist's report. But the mother's affidavit is still extending the same inconsistency. So the board recently concluded, why do we need to redo this case? As Judge Kayada pointed out, there are thousands of these cases. And we can send back thousands of cases to redo again. But the due process clause does not require a perfect proceeding. It requires a process that is full and fundamentally fair to the non-citizen. And that is what the petitioner received here. I'm not talking about due process. Go ahead, Judge Thompson, please. Does due process obligate the government to give the petitioner an opportunity to review the evidence against her? It does. And that's what happened here in this particular case. Exhibit 1 with the asylum officer's statements was provided to petitioner six weeks prior to the hearing. So she had Exhibit 1. What came into the hearing in real time was Exhibit 3, dealing with the 2017 statements. But again, that was impeachment evidence that was against her at that particular time. And impeachment evidence, as we noted in our brief, does not have to be given out initially to the non-citizen. So if there's no further questions, we ask the court to deny the petition for review. Judge Lopez, you had one last question. Thank you, Your Honors. Attorney Mack, thank you. Please mute your audio and video at this time. Attorney Kim, please unmute your audio and video and proceed with your one minute of rebuttal. Thank you. May it please the court, Seng-Yeop Kim for petitioner. Let me start with this, how unfair this proceeding was. So if you look at the transcript of the last hearing, the IG did not even ask the attorney for the Department of Homeland Security to see whether they had any document to submit. That doesn't really happen if the person is represented. All of the cases I went through, the judges at least asked that question to the Department of Homeland Security. Judge only asked that question to petitioner, not the other side. So that's how unfair the proceeding was. And when this document was submitted in the middle of the cross-examination, and unless how my brother explained impeachment evidence. Mr. Kim, does the judge ask that question before the proceeding gets started? Or before the document gets used? So, judge did not ask any question at the outset of the last hearing to the attorney for the Department of Homeland Security. Judge only asked that question if petitioner had any documents to submit at the outset of the last hearing. Counsel, that's time. May I, if I may, may I answer that question? Please. So, when the attorney for the Department of Homeland Security started to question based on that 2017 credible fear interview notes, judge was confused. Judge was confused because, judge, information that Department of Homeland Security was relying on was absent from 2019 report. Which is why judge asked the attorney, what is this information coming from? And at that point, attorney for the Department of Homeland Security admitted that it was 2017, and it was not submitted to the petitioner and to the court until this moment. Even though it was all in their position. And then later on, when they provide- How do you respond to counselor's remark that you don't have to submit impeachment evidence ahead of time? So, that's completely disregard. I respectfully ask to disregard the unique nature of removal proceedings. So, in this case is a perfect example. The attorney for the Department of Homeland Security presumably submitted this document for as impeachment evidence that we see in civil proceedings. But at their conclusion, they relied on this document for the government inaction argument, which was substantive. So, they actually used not only for impeachment, but substantive. And any document coming into removal proceedings, I just mark them as evidence. They don't distinguish, technically distinguish impeachment versus substantive. So, in reality, all the evidence that purported to be impeachment purposes, they're also being used for substantive. That's the reality that we are facing for asylum seekers. And because the violation of the statutory statute was violated, because due process violated, we ask court to grant a petition based on those grounds. Thank you, Mr. Kim. Thank you. That concludes the argument in this case. Attorney Kim and Attorney Mack, please disconnect from the hearing at this time.